| | |
|---|---|
| DISTRICT COURT OF ARAPAHOE COUNTY<br>STATE OF COLORADO<br>7325 S. Potomac Street<br>Centennial, CO 80112<br>_____<br><br>Plaintiffs: **ASIA HOWELL and DEMARKIS MCCOLLISTER,** individually and on behalf of all others similarly situated,<br><br>**v.**<br><br>Defendant: **GATE GOURMET, INC.,** a Colorado corporation.<br>_____<br>Attorneys for the Plaintiffs:<br><br>Claire E. Hunter, #39504<br>Adam M. Harrison, #50553<br>Cynthia J. Sanchez, #55999<br>HKM Employment Attorneys LLP<br>518 17th Street, Suite 1100<br>Denver, Colorado 80202<br>Phone: (720) 255-0370<br>Fax: (720) 668-8989<br>E-mail: chunter@hkm.com<br>       aharrison@hkm.com<br>       csanchez@hkm.com | DATE FILED: February 2, 2024 12:06 PM<br>FILING ID: 3ECB7C9343081<br>CASE NUMBER: 2024CV30238<br><br><br>▲COURT USE ONLY▲<br>_____<br><br>Case Number:<br><br>Division: |
| **INDIVIDUAL AND CLASS ACTION COMPLAINT** | |

      The Plaintiffs, Asia Howell ("Howell") and Demarkis McCollister ("McCollister") (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned attorneys from HKM Employment Attorneys LLP, as their Individual and Class Action Complaint ("Complaint") against the Defendant, Gate Gourmet, Inc., a Delaware corporation ("Gate Gourmet" or the "Defendant"), state as follows:

### NATURE OF THE ACTION

      1.    This case arises from the Defendant's ongoing failure to provide compensated rest periods to Howell and Demarkis and others similarly situated or, in the alternative, compensate

1

Howell, Demarkis, and others for the work they performed during 10-minute periods that should have been compensated rest periods, in violation of the Colorado Wage Act, C.R.S. § 8-4-101 *et seq*. ("CWA"), the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq*. ("CMWA"), the applicable Colorado Minimum Wage Orders, 7 C.C.R. 1103-1 (2018-20), and the applicable Colorado Overtime and Minimum Pay Standards ("COMPS") Orders, 7 C.C.R. 1103-1 (2020-24) (collectively "Colorado Wage and Hour Law").

2. Howell and Demarkis are two of dozens of hourly employees ("Class Members") that worked for Gate Gourmet in Colorado from May 2022 to the present ("Relevant Period"). Gate Gourmet has consistently failed to provide Howell, Demarkis, and the other Class Members with compensated rest periods during their employment. Howell, Demarkis, and the other Class Members regularly work eight-hour shifts without a rest period.

3. Gate Gourmet violated and is continuing to violate Colorado Wage and Hour Law by failing to provide rest periods for every four hours, or major fractions of four hours, that the Class Members worked and by failing to pay hourly employees all of the wages/compensation they earned. *See* Ex. 1: Colo. Dep. of Labor and Emp., Div. Labor Stds. and Stats., Interpretive Notice & Formal Opinion ("INFO") #4, Meal and Rest Periods.

4. At all times relevant to this Complaint, Gate Gourmet knew – or through the exercise of reasonable diligence should have known – that its actions violated Colorado Wage and Hour Law. As such, Gate Gourmet's violations of Colorado Wage and Hour Law were and are willful. *See* C.R.S. §§ 8-4-109(3)(b)(II) (enhanced penalties for willful violations); 8-4-122 (three-year statute of limitations for willful violations of CWA); *see also Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (wage violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute").

5. Howell and Demarkis seek back wages, applicable statutory penalties under C.R.S. § 8-4-109(3), reasonable attorney's fees, and costs (including the costs of class administration, expert witnesses, and all other costs incurred as a result of the Defendant's violations of Colorado Wage and Hour Law) for themselves and the other Class Members. The Plaintiffs also reserve the right to seek a service award for their time and efforts on behalf of the other Class Members.

**PARTIES**

6. Howell is a Colorado citizen who is domiciled at 8500 East Mississippi Avenue, Denver, Colorado 80247.

7. At all times relevant to this Complaint, Howell was an "employee" subject to the protections of Colorado Wage and Hour Law. C.R.S. § 8-4-101(5). *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103, Rule 1.5(A).

8. Demarkis is a Colorado citizen who is domiciled at 1089 S Lewiston Way, Aurora, Colorado 80017.

2

9.  At all times relevant to this Complaint, Howell was an "employee" subject to the protections of Colorado Wage and Hour Law. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103, Rule 1.5(A).

10. Gate Gourmet is a Delaware company with its principal office at 11955 Democracy Drive, 17th FL, Reston, Virginia 20190. The Defendant may be found and served through its registered agent, Corporation Service Company, at 1900 W. Littleton Boulevard, Littleton, Colorado 80120.

11. At all times during the Relevant Period, Gate Gourmet did business in Colorado as part of Colorado's Retail and Service and Commercial Support industries. *See* 7 C.C.R. 1103-1, 2(A), and 2(B) (2018-20).

12. At all times during the Relevant Period, the Plaintiffs and the other Class Members performed work for Gate Gourmet in the State of Colorado. *See* C.R.S. § 8-1-111 ("The director is vested with the power and jurisdiction to have such supervision of every employment and place of employment in this state...").

13. At all times during the Relevant Period, Gate Gourmet was an "employer" subject to the requirements and prohibitions of Colorado Wage and Hour Law. *See also* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1, Rule 1.6(A).

## JURISDICTION AND VENUE

14. The Plaintiffs incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

15. This Court has original jurisdiction over this action pursuant to Article 6 § 9(1) of the Colorado Constitution and C.R.S. § 13-1-124(1)(a) and (b), and (c).

16. At all times relevant to this Complaint, Gate Gourmet did substantial business in Colorado, and the Plaintiffs and other Class Members worked for Gate Gourmet in Colorado.

17. Venue is proper before this Court pursuant to Rule 98 because Gate Gourmet's Registered Agent in Colorado is located in this District and the Defendant will be served in this District.

## GENERAL ALLEGATIONS

18. The Plaintiffs incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

19. Howell has worked for Gate Gourmet as a Customer Service Representative ("CSR") since May 2022.

3

20. As a CSR, Howell is responsible for loading galley equipment onto a truck, driving the truck to aircraft, and unloading 200-pound carts off the truck and into the aircraft.

21. McCollister worked for Gate Gourmet as a Customer Service Assistant ("CSA") from September 2022 until November 23, 2023.

22. As a CSA, McCollister was responsible for loading equipment onto trucks, guiding the CSRs to aircraft, and moving equipment from the truck to the aircraft galley.

23. Gate Gourmet pays the Plaintiffs and other Class Members on an hourly basis.

24. Howell's current rate of pay is $23.46 per hour.

25. McCollister's final rate of pay was $21.75 per hour.

26. The Defendant has employed dozens of hourly employees – the putative Class Members in this action – in Colorado during the Relevant Period.

27. Gate Gourmet requires Howell and other Class Members to clock in and clock out using its Kronos Time Management software, which is located inside the Defendant's building, adjacent to the Denver International Airport.

28. Gate Gourmet schedules Howell and other Class Members for either a night shift from 2:00 p.m. to 10:30 p.m., a morning shift from 5:00 a.m. to 1:30 p.m., or a day shift from 8:00 a.m. to 4:00 p.m.

29. The shifts are at least eight hours, which legally entitles Howell and other Class Members to two compensated rest periods.

30. During McCollister's employment, he generally worked eight-hour shifts, which entitled him to two compensated 10-minute rest periods.

31. In September 2022, October 2022, and March 2023, McCollister worked 12-hour shifts which entitled him to three compensated 10-minute rest periods.

32. Based on Howell's and McCollister's observations, experience, and conversations with many other hourly employees, they are aware that other Class Members work similar shifts.

33. During a shift, Howell and other Class Members generally load food for eight to twelve flights.

34. Howell and other Class Members perform a "push" when they go to the Defendant's kitchen to load trucks with food for the flights they are catering.

35. A push can generally take two to three hours to complete.

36. Howell generally performs two pushes per shift, loading food for four flights per push.

37. After a push, Howell then performs a "load" by unloading the food into the aircraft.

38. Based on Howell's experience, a load can take between thirty-five minutes to forty-five minutes to complete.

39. After a load is completed, Gate Gourmet requires Howell and other Class Members to remain inside their trucks by the airport gate until the next aircraft arrives.

40. Gate Gourmet prohibits Howell and other Class Members from clocking out to take a 10-minute rest period for each four hours of work, or major faction of that time, during their shift.

41. Gate Gourmet further discourages employees from taking any rest periods in between loads, even if a flight is delayed.

42. For example, Gate Gourmet does not allow Howell and other Class Members to go to the Defendant's kitchen to take a rest period when a flight is delayed.

43. Additionally, Gate Gourmet instructs Howell and other Class Members to use the aircraft's bathroom when they are loading the food onto the plane, which is impractical because the cleaning crew is cleaning the aircraft.

44. In or around August 2022, Howell learned employees were purchasing portable toilet bags to urinate in the trucks because Gate Gourmet generally does not provide employees with the opportunity to use the bathroom during their shift.

45. Gate Gourmet had generally not provided Howell and other Class Members with compensated 10-minute rest periods since she started her employment.

46. Howell is currently working approximately forty hours a week without any compensated rest periods.

47. When the Defendant requires Howell, McCollister, and other Class Members to work through their ten-minute rest periods, their shifts are effectively extended by ten minutes.

48. As a result, Howell, McCollister, and other Class Members provided the equivalent of twenty minutes of work to the Defendant without additional compensation.

49. Based on Howell's observations and experiences, Gate Gourmet occasionally requires employees to take a meal break at the end of their shift.

50. For example, in 2022, Khalid (last name known), Howell's then supervisor, instructed her to take her lunch break at 9:30 p.m., thirty minutes before Howell's shift ended.

51. On that day, Howell had not taken any rest periods or meal periods.

52. Howell asked Khalid if she could clock off instead, but Kahlid obligated Howell to clock out until 10:00 p.m. and then clock in only to clock out to end her shift.

53. At all times during the Relevant Period, Gate Gourmet has not provided hourly employees with compensated 10-minute rest periods for every four hours, or major fractions of four hours, that the employees worked, as required by Colorado Wage and Hour Law.

54. Gate Gourmets' ongoing failure to provide compensated, 10-minute rest periods has resulted in a failure to compensate Howell, McCollister, and other Class Members for the work they performed during 10-minute periods that should have been compensated rest periods.

55. As a result of Gate Gourmet's failure to provide rest periods, Howell is regularly deprived of rest periods and/or rest period compensation for 10 rest periods per week.

56. Howell estimates that she worked through more than 852 rest periods during the Relevant Period.

57. McCollister estimates that he worked through more than 665 rest periods during the Relevant Period.

58. Based on Howell's and McCollister's observations, experience, and conversations with many other hourly employees, other Class Members have also worked without rest periods and/or any compensation for missed rest periods.

59. Based on Howell's and McCollister's knowledge, observations, and experience, the company-wide policies and practices generally prevented all of the employees from taking rest periods, and throughout Howell's and McCollister's employment, Gate Gourmet's practice has been and continues to be not to provide compensated, duty-free, 10-minute rest periods to employees.

60. For example, McCollister repeatedly requested rest periods, but his supervisor, Ruth Anguiano, told him the Defendant was not obligated to provide him with rest periods.

61. On November 8, 2023, McCollister sent a written demand to the Defendant for his unpaid wages, pursuant to C.R.S. § 8-4-109.

62. The Defendant received the demand but failed to pay McCollister his owed wages.

63. To date, Gate Gourmet continues to deprive Howell and other Class Members of compensated rest periods.

64. At all times relevant to this Complaint, the Defendant knew or through the reasonable exercise of diligence should have known that it was required to provide compensated

6

rest breaks to its employees and failed to do so. Accordingly, Gate Gourmet's violations of Colorado Wage and Hour Law were willful.

## CLASS ALLEGATIONS

65. The Plaintiffs incorporate the allegations in the foregoing paragraphs as if fully set forth herein.

66. In addition to bringing her claims individually, Howell also brings this case as a class action under C.R.C.P. 23 on behalf of the following classes:

> **CWA Class**: All current and formerly employed hourly employees who worked for Gate Gourmet in Colorado between February 2, 2021, and the present;[1] and
>
> **CMWA Class:** All individuals who worked for Gate Gourmet as hourly employees in Colorado from January 29, 2018, to February 1, 2021.[2]

67. Both Classes satisfy the prerequisites and requirements of C.R.C.P. 23:

   a. The Classes consist of dozens of employees and former employees. Joinder of all such individuals would be impracticable.

   b. There are questions of law and fact that are common to the Classes that predominate over issues affecting only individual Class Members, including but not limited to:

   i. Whether the Defendant is covered by Colorado Wage and Hour Law;

   ii. Whether the Defendant failed to provide rest periods to Howell and the Class Members as required by Colorado Wage and Hour Law;

   iii. Whether the Defendant failed to compensate Howell and the Class Members for the time they worked during periods that should have been compensated rest periods; and

   iv. Whether the Defendant's violations of Colorado Wage and Hour Law were "willful" as a matter of law.

---

[1] *See* C.R.S. § 8-4-122 (setting out a three-year statute of limitations for willful violations of CWA).

[2] *See Perez v. By the Rockies, LLC*, 2023 COA 109, ¶ 1 (holding the applicable statute of limitations period for claims brought under the Colorado Minimum Wage Act is six years.).

7

68. Howell's claims are typical of the Class Members' claims because she was subject to the policies and practices that are at issue in this action: the Defendant failed to provide her with more than 852 rest periods.

69. Howell will fairly and adequately protect the interests of the Classes. She has retained counsel that is experienced in wage and hour class litigation, and Howell and her counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Class.

70. The prosecution of this case as a class action is superior to other methods of adjudication. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant and would not serve the interests of judicial economy. Adjudications with respect to individual Class Members would as a practical matter be dispositive to the interests of the Class Members or substantially impair or impede their ability to protect their interests. The Defendant has acted on grounds generally applicable to the Class. Moreover, other than Howell, no Class Member has commenced their own litigation.

## FIRST CLAIM FOR RELIEF

**FAILURE TO PROVIDE COMPENSATED REST PERIODS IN VIOLATION OF THE COLORADO WAGE ACT**
**C.R.S. § 8-4-101** *et seq.*
**7 C.C.R. 1103-1**

*On behalf of Howell and the CWA Class*

71. Howell incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

72. Under Colorado Wage and Hour Law, employers are required to provide employees with compensated 10-minute rest periods for every four hours, or major fractions of four hours, that the employees work. 7 C.C.R. 1103-1, Rule 5.2 (2021-2024).

73. The COMPS Order notes the following:

> [w]hen an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work … Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages…

*Id*. at Rule 5.2.4. *See also Pilmenstein v. Devereux Cleo Wallace*, 2021 COA 59, ¶¶ 19, 39; *see* **Ex. 1**.

8

74. Employers who violate the CWA by failing to pay wages/compensation earned by an employee, and who continue to violate the Act by failing to tender such wages/compensation within 14 days of receiving a "written demand" are liable for either: (A) treble damages, if the employee is not able to show that the employer's wage violation was "willful;" or (B) quadruple damages, if the employee is able to show that the violation was willful. C.R.S. § 8-4-109(3)(a)-(b).

75. This Complaint constitutes a "written demand" to the Defendant for Howell and the Class Members unpaid wages, pursuant to C.R.S. § 8-4-109(3)(b). Accordingly, if Defendant fails to make a good faith tender of the amounts the Plaintiff and the Class Members are owed within fourteen days of receipt of this Complaint, the Defendant is liable for unpaid wages, plus statutory penalties, and attorneys' fees and costs.

76. In addition, employers who violate the CWA are presumptively liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages. C.R.S. § 8-4-110(b); *Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1058 (Colo. App. 2014) (holding that CWA contains rebuttable presumption that prevailing employee is entitled to fees and costs).

77. Gate Gourmet violated Colorado Wage and Hour Law by failing to provide rest periods to Howell and the CWA Class Members, or to compensate the hourly employees for the rest periods that were not provided to them.

78. Because Gate Gourmet knew or should have known that they were required to provide rest periods to hourly employees and failed to do so, Gate Gourmet's violations of Colorado Wage and Hour Law were willful as a matter of law.

79. Accordingly, Gate Gourmet is liable to the Plaintiffs and other Class Members for unpaid wages for every rest period that was not provided, mandatory penalties, additional penalties, reasonable attorney's fees, and costs. *See Pilmenstein*, 2021 COA 59, ¶¶ 19, 39; *see also* C.R.S. § 8-4-109(3), 8-4-110.

## SECOND CLAIM FOR RELIEF

### FAILURE TO PROVIDE COMPENSATED REST PERIODS IN VIOLATION OF THE COLORADO MINIMUM WAGES OF WORKERS ACT

### C.R.S. § 8-6-101
### 7 C.C.R. 1103-1:8 (2018-2021)

*On behalf of Howell and the CMWA Class*

80. Howell incorporates the allegations in the foregoing paragraphs as if fully set forth herein.

81. At all times relevant to this Complaint, the CMWA required Gate Gourmet to provide hourly employees with compensated 10-minute rest periods for every four hours, or major fractions of four hours, that the hourly employees worked. *See* 7 C.C.R. 1103-1:8 (2018-2021).

82. Gate Gourmet violated the CMWA by failing to provide rest periods to Howell and the CMWA Class Members, or to compensate the hourly employees for the rest periods that were not provided to them.

83. As such, Gate Gourmet is liable to Howell and the CMWA Class Members for unpaid minimum wages, reasonable attorney's fees, and costs. *See* C.R.S § 8-6-118; *see also Pilmenstein*, 2021 COA 59, ¶¶ 19, 39.

## **PRAYER FOR RELIEF**

For the reasons set forth above, judgment should be entered for the Plaintiffs and Class Members, and against the Defendant, and the Plaintiffs and Class Members should be awarded:

I. A declaratory judgment condemning the Defendant's violations of Colorado Wage and Hour Law;

II. Temporary and permanent injunctions prohibiting the Defendant from continuing to violate Colorado Wage and Hour law;

III. At the earliest practicable time, the Court should certify the CWA Class and the CMWA Class pursuant to C.R.C.P. 23, appoint Howell and her counsel to represent the Class, and authorize notice of this action to be sent to all potential Class Members;

IV. To the Plaintiffs and the CWA Class Members:

   a. Back wages, including unpaid rest period compensation, in amounts to be determined at trial;

   b. Mandatory penalties under C.R.S. § 8-4-109(3)(b)(I) in an amount to be determined at trial; and

   c. Additional penalties under C.R.S. § 8-4-109(3)(b)(II) in an amount to be determined at trial;

V. To the CMWA Class Members:

   a. Unpaid rest period compensation, in amounts to be determined at trial;

VI. The Plaintiffs' and Class Members' reasonable attorney's fees;

VII. The costs incurred by the Plaintiffs and other Class Members in this action; and

VIII. All other and further relief that the Court or the jury may find to be equitable, appropriate, and just.

Respectfully submitted on this 2nd day of February, 2024.

/s/ Adam M. Harrison
_____
Claire E. Hunter, #39504
Adam M. Harrison, #50553
Cynthia J. Sanchez, #55999
HKM Employment Attorneys LLP
518 17th Street, Suite 1100
Denver, Colorado 80202
Phone: (720) 255-0370
Fax: (720) 668-8989
E-mail: chunter@hkm.com
         aharrison@hkm.com
         csanchez@hkm.com

*Counsel for the Plaintiffs Asia Howell and Demarkis McCollister, individually and on behalf of all others similarly situated.*

11

DATE FILED: February 2, 2024 12:06 PM
FILING ID: 3ECB7C9343081
CASE NUMBER: 2024CV30238

# EXHIBIT 1

**COLORADO** | Division of Labor Standards and Statistics
Department of Labor and Employment | 633 17th Street, Denver, CO 80202-2107
303-318-8441 | www.ColoradoLaborLaw.gov | www.LeyesLaboralesDeColorado.gov

# Interpretive Notice & Formal Opinion ("INFO") # 4:
## Meal and Rest Periods

### Overview

This INFO addresses what qualifies as a meal and rest period, and when such periods are required under Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 CCR 1103-1.

### Meal Periods of 30 Minutes (sometimes called "Lunch breaks")

For shifts of over 5 consecutive hours, all employees are entitled to uninterrupted, duty-free meal periods of at least 30 minutes (unless the COMPS Order makes them exempt).[1]

- **Timing**: Meal periods must be at least 1 hour after starting and 1 hour before ending a shift, to the extent practical.

- **When meal periods can be unpaid**: For meal periods to be unpaid, non-work time, employees must be completely relieved of all duties, allowed to leave the work site, and allowed to do personal activities.

- **If uninterrupted meal time is impractical**: If the type of work makes an uninterrupted, duty-free meal period impractical, an employer must let an employee eat while working, and pay for that time.[2] Whether a meal period is impractical depends on the situation. But except in special cases, an employer can't declare *all* meal periods for *all* employees impractical, and never provide them, even if it pays for the time.

    **Example 1:** A security guard patrolling outdoor facilities by car had 30-minute meal periods. During that time, the employee was relieved of patrolling duty, and allowed to exit the car — but not allowed to leave the work site or nap. The employee's activities were at least partly restricted, and they could not leave the work site – either of those facts was enough to make the 30 minutes not qualify as an unpaid meal period, so that time had to be paid. (*Raven Corp*, DLSS Case #1305-17 (Hearing Officer Decis. No. 18-034, May 30, 2018) ("The plain language [of the meal period rule] ... provides employers with a clear choice: relieve employees of all job duties for at least 30 minutes *and* permit them to pursue personal activities or, if impractical, let them eat while on duty and compensate them for their time.").

    **Example 2.** A grocery store is staffed with multiple checkout aisles, each staffed with a cashier scheduled for 6 or more consecutive hours per shift. The employer pays for all time, and lets cashiers eat while on-duty. But it provides no meal periods, explaining that all meal periods are "impractical" because the store is "always busy." This denial of meal periods is unlawful. The store can allow meal periods and still operate checkout aisles, because it can schedule cashiers to take meal periods at different times. While having staff never take breaks may save on staffing, and make scheduling easier, that's not enough to make meal periods "impractical" enough for an employer to disallow them in.

    **Example 3:** A 24-hour gas station and convenience store does not allow an uninterrupted meal period for the one employee who works the 10:00 p.m. to 6:00 a.m. overnight shift. This is permissible, because the employee must be on-duty for the entire shift to serve customers, and the options the employer has to let the employee leave the work site for an uninterrupted duty-free meal period are impractical: (a) closing the entire business, or (b) covering the employee's 30-minute meal period by hiring a second staffer it does not need other than for those 30 minutes. But the employer must let the employee eat a meal while on duty, and must pay their agreed-upon rate for that time.

---

[1] For a summary of exemptions from meal and rest periods in the COMPS Order, see INFO #1. As of June 2021, agricultural employees receive the same rest and meal periods as other employees, as INFO #12B explains.

[2] COMPS Order, Rule 5.1

INFOs are not binding law, but are the Division's officially approved opinions and notices to employers, employees, and others on how the Division applies and interprets statutes and rules. The Division continues to post and update INFOs on various topics; for up-to-date INFOs, rules, and other materials, visit the Division's Laws, Regulations & Guidance page. *Last updated May 23, 2022*

## Rest Periods of 10 Minutes

Employers must authorize and permit paid 10-minute rest periods for **each 4 hours of work**, or major fraction of that time (i.e., more than 2 hours). An additional rest period is required for any period that rounds up to four hours. For example, a shift of 2 hours or fewer requires no rest periods, a 2-hour and 1 minute shift requires one, and a 6-hour shift also requires one, but a 6-hour and 1-minute shift requires two.

| Work Hours | Rest Periods Required |
|---|---|
| 2 or fewer | 0 |
| Over 2 and up to 6 | 1 |
| Over 6, and up to 10 | 2 |
| Over 10, and up to 14 | 3 |
| Over 14, and up to 18 | 4 |
| Over 18, and up to 22 | 5 |
| Over 22 | 6 |

- Rest periods must not include work, but employers don't have to let employees leave the work site.
- Rest periods should be in the middle of each 4-hour work period, to the extent practical.[3]

## Authorize and Permit

Employers must authorize and permit their employees to take all required rest periods.[4] This **does not** mean that employees must actually **have** a rest period, if they choose to keep working. However, the choice to skip a rest period must be entirely voluntary and made without employer coercion.

If an employer asserts that an employee had permission to take a rest period, but in reality the employee was unable or discouraged to do so, then a rest period was not "authorized and permitted." "Authorize" means formal permission to take a rest period, but "permit" means, given workplace realities, the employee **actually was able** to take a rest period **without repercussions**. A handbook, policy, or schedule that appears to allow a rest period is not *conclusive* evidence a rest period was authorized or permitted, *if* the employee provides evidence that workplace realities created either pressure to skip, or practical obstacles to taking, a rest period.[5] Possible evidence an employer did not in reality permit rest periods may include that the employer:

1) pressured an employee not to take rest periods,
2) knew an employee's workload, schedule, deadline, or quota made rest periods infeasible; and/or
3) did not adequately inform employees that rest periods were paid.[6]

## In the Middle of Each 4-Hour Period

Rest periods must be as close as possible to the middle of each 4 hours that employees work.[7] This ensures that employees receive rest periods roughly every 4 hours.

> **Example 5:** If an employee works 8 hours, they should not receive their 2 rest periods in the first and last hours of the workday. That would leave them working over 6 hours without a rest period.

---

[3] COMPS Order, Rule 5.2.

[4] COMPS Order, Rules 5.2 & 5.2.4.

[5] Brinker Restaurant Corp. v. Superior Court, 273 P.3d 513, 546 (Cal. 2012) (rest period rules "do not countenance an employer's exerting coercion against the taking of, creating incentives to forego, or otherwise encouraging the skipping of legally protected breaks"; an "informal anti-meal break policy 'enforced through ridicule or reprimand would be illegal'").

[6] See Brinker (above); Cicairos v. Summit Logistics, 35 Cal. Rptr. 3d 243, 253 (Cal. Ct. App. 2005) ("'as long as an employer authorizes and permits…rest periods (and clearly communicates this authorization and permission), the employer will not be liable … if the employees fail to take … rest breaks, provided that the employees did not forego the full rest period as a result of …coercion or encouragement'" (quoting Dept of Industrial Relations, DLSE Opinion Letter 2001.04.02)).

[7] COMPS Order, Rule 5.2.2.

*Last updated May 23, 2022*

**Alternate Rest Period Schedules**

An employer may provide shorter rest periods, of at least 5 minutes, **only if**:

1) the employee and the employer agree, **voluntarily and without coercion**, to have two 5-minute rest periods every 4 hours, *and* 5 minutes is sufficient, in the work setting, to allow the employee to go back and forth to a bathroom or other location where a bona fide rest period would be taken; *or*

2) the work is under a collective bargaining agreement, or in Medicaid-funded home care (defined in COMPS Order, Rule 5.2.1(B)), *and* the day's total rest periods average 10 minutes per 4 hours.

Alternatively, an employee may **voluntarily and without coercion agree** on a different rest period schedule with the employer — for example, if an employee wants to combine two rest periods into one 20-minute rest period. Employers are not required to negotiate rest period schedules, though. Any agreement to a different rest period schedule doesn't change the employee's right to payment for time spent on duty during rest period time.[8]

**Impracticality / Practicality**

The practicality of rest periods doesn't affect *whether* rest periods must be provided, only *when* they must be — in the middle of a shift or not. If rest periods are not provided, extra pay must be given — see below.

**Payment Due for Missed Rest Periods**

Rest periods are considered time worked, including for purposes of calculating minimum wage and overtime.[9]

- **Pay is owed for rest periods not provided**: A rest period requires 10 minutes of pay without work, so work performed during a rest period is additional work requiring additional pay. That means a failure to authorize and permit a duty-free, 10-minute paid rest period is a failure to pay 10 minutes of wages at the **employee's agreed-upon or legally required** rate of pay (whichever is higher).[10]

    **Example 6**: Each week, an employee is paid $15 per hour for five 7-hour days: two 3½-hour work shifts, with a duty-free 30-minute meal period in-between — and no rest periods. But each day the employer pays for 7 hours, they should receive only *6 hours and 40 minutes* of work — because the employee should have had 10 minutes of non-work in each 3½-hour shift. So in addition to the employee's 35 paid hours, the employee is owed extra pay for working an extra 20 minutes each day, for a total of 100 extra minutes of pay per week. Even with the extra 100 minutes, the employee did not work over 40 hours per week, so overtime pay isn't required.[11] The employee must be paid an extra 100 minutes at their $15 hourly pay rate — a total of $25 more per week.

- **Pay owed for *all* rest period time denied**: The rule that wages are owed when rest periods are not authorized and permitted applies to *all* rest period time, including:

    ○ **rest periods of different lengths** — for example, 15-minute rest periods for hand-weeding;

    ○ **partial rest periods** — for example, if an employer provides a 5 minutes rather than 10 minutes of rest period, then they owe 5 minutes of pay; and

    ○ **salaried or other non-hourly-paid employees**, unless they qualify for a specific exemption.

---

[8] COMPS Order, Rule 5.2.1.

[9] COMPS Order, Rule 5.2.3.

[10] COMPS Order, Rule 5.2; Lozoya v. AllPhase Landscape Construc., #12-cv-1048-JLK, 2015 WL 1757080, at *2 (D. Colo. Apr. 15, 2015) ("[B]eing forced to work through required rest breaks means in effect that Plaintiffs were not compensated for that time," because when "employees are not provided with the mandated rest period, their workday is extended by 10 minutes," so they can sue "for lost wages because of unused rest breaks") (quoting Wingert v. Yellow Freight Sys., 50 P.3d 256, 260 (Wash. 2002)); Sanchez v. Front Range Transp., #17-cv-00579-RBJ, 2017 WL 4099896, at *4 (D. Colo. Sept. 15, 2017) (employee denied "rest periods, for which she would have been paid, ... effectively provided the equivalent number of minutes of work … without additional compensation," and may claim unpaid wages) (citing Lozoya)).

[11] Example 10 below illustrates how rest period pay is calculated in workweeks and workdays requiring overtime pay.

>   **Example 7**: A car dealership provides no rest periods to its manager or its mechanic:
>
>   (A) The *manager* is paid $2,000 per week and spends almost all their time as a supervisor. They are an exempt "executive or supervisor" under COMPS Rule 2.2.2. That rule exempts from *both* overtime *and* rest and meal periods, so providing no rest periods is legal.
>
>   (B) COMPS Rule 2.4.1 exempts a *mechanic* at a car dealer from *overtime*, but not *rest and meal* periods. The mechanic works five 12-hour shifts, at a $1,600 salary, weekly. Each 12-hour shift should have had 12 hours of pay for 11 hours and 30 minutes of work, plus three 10-minute rest periods. By giving 12 hours' pay for 12 hours' work, the employer required extra work: 30 minutes a day, 150 minutes a week. The mechanic's regular hourly rate is $40: the $1,600 salary divided by 40 hours.[12] The employer owes $100 in extra weekly pay: $40 per hour for 150 minutes.

- **Can't pay extra instead of giving breaks**: The rest period rule says: "**Every** employer shall authorize and permit a compensated 10-minute rest period. … for **all** employees."[13] That means employees must actually be allowed to go off-duty. The rule offers **no alternative to authorizing and permitting rest**, only permission to have shorter rest periods in some situations and requirements to have longer ones in others, or for employees to voluntarily choose, without coercion, not to take rest periods. This is different from the meal period rule, which lets employers require, if duty-free meal periods are impractical, employees to work through meal periods, with pay and permission to eat during that time.[14]

>   **Example 8**: An employer pays all of its warehouse employees $20 per hour. The employees work 8-hour shifts, with a meal period (30 minutes, unpaid), but no rest periods. An employee asked about this, and the owner responded, "I already pay you more than minimum wage, so the extra pay covers the 20 minutes of rest you would be taking." This is a violation because the employer did not provide the employees with two 10-minute rest periods, so the employees worked for 20 extra minutes each day. Each employee has a monetary claim for unpaid wages of $6.67 per day. It is also a non-monetary violation of the duty to allow rest periods, subjecting the employer to possible fines and compliance orders, as detailed below.
>
>   **Example 9**: A 24-hour gas station has two cashiers on 1st shift, two on 2nd shift, and one on 3rd shift. Each is paid $15 per hour. On 1st and 2nd shift, the cashiers take turns taking rest and meal periods, so someone is always available to cover the counter. The employer tells the 3rd shift employee they can eat during their shift but can't take rest periods, because they are the only person at work. The employer pays that cashier an extra $5 per shift, to make up for the rest period time. There is no monetary violation, because the employer paid the employee for the time worked that they were entitled to use for rest. But there is a non-monetary violation of the duty to allow rest periods, subjecting the employer to possible fines and compliance orders, as detailed below.[15]

---

[12] The hourly regular rate of pay for a salaried employee is their weekly pay rate divided by 40 hours, with an exception. If there is a "clear mutual understanding" that a weekly salary (or other non-hourly pay) provides the *regular, non-overtime* rate for all hours worked, with extra pay added for overtime hours, then the regular rate is the weekly pay divided by actual hours worked. If, as in this example, the employee was not paid extra for overtime hours, then there is no such understanding, so the hourly regular rate of pay is the weekly pay rate divided by 40 hours. COMPS Order Rule 1.8 explains how to calculate "regular rates" of pay.

[13] COMPS Order, Rule 5.2.

[14] COMPS Order, Rule 5.1.

[15] Requiring the employee to work through their meal period was not a violation, because it was impractical as explained above, the employee was allowed to eat on the job, and the employee was paid for all time worked.

## When Payment Due for Missed Rest Periods Is Overtime Premium Pay

Time-and-a-half overtime pay is required for work past 40 hours in a week or 12 in a day[16] (except for overtime-exempt employees[17]), and "required rest periods are time worked for the purposes of calculating ... overtime."[18] That means pay for missed rest periods must be at time-and-a-half overtime rates for any missed rest periods during overtime hours – the hours past 40 in a week, or 12 in a day.[19]

> **Example 1u:** An employee who works four 10-hour days per week and is paid $30 per hour is not allowed to take rest or meal periods. Because they were required to work through rest periods, the employee's shifts were extended by 20 minutes per day (100 minutes per week). That puts their time worked over 40 hours per week, since rest periods are time worked for overtime purposes. The employee is owed an extra $15 per hour in overtime premium pay for the extra 100 minutes of time worked, for a total of $25 per week.

## Employer Tracking and Record-Keeping

Employers must ensure the availability of meal and rest periods, keep daily records of all time worked by each employee, and give employees pay statements which include total hours worked in the pay period.[20] "Time worked" includes all rest period time, and meal period time if an employee works through meal period time.

## Remedies Other than Unpaid Wages: Compliance Orders and Fines

Whether or not a violation requires paying extra wages to any employees, violations may yield other remedies:

- **compliance orders**, requiring the employer to cease the violation, change policies causing the violation, and otherwise redress the violation; and/or

- **fines**, for violations of Division rules or other orders, including the COMPS Order Rule 5 requirements to provide meal breaks unless impractical, and to provide rest breaks.[21]

## Additional Information

Visit the Division's website, call 303-318-8441, or email cdle_labor_standards@state.co.us.

---

[16] COMPS Order, Rule 4.1.

[17] COMPS Order, Rule 2.2-2.5.

[18] COMPS Order, Rule 5.2.3.

[19] See Super Mario Construction, LLC, DLSS Direct Investigations Case #20-0026 (Citation & Notice of Assessment, Nov. 23, 2021), at 32:

> Unless done at the election of the employee—voluntarily and without coercion—working through a rest period constitutes ten additional minutes of work for which compensation, including overtime as applicable, is owed[.] ... Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages ... , plus overtime premium should these additional 10 minutes be considered overtime. For example, where an employee works 12 hours but does not receive three legally-required breaks during that shift, the employee has worked an additional 30 minutes (3 x 10 minute breaks), all of which must be paid at an overtime rate under the daily overtime rule.

See also Lozoya, above, at *2 ("Plaintiffs seek straight or overtime pay for the rest periods required ... that Defendant allegedly did not allow.... I find that Plaintiffs may prevail on their claim for lost wages because of unused rest breaks.") (citing Wingert, above, 50 P.3d at 256); Washington State Nurses Ass'n v. Sacred Heart Medical Center, 287 P.3d 516, 519 (Wash. 2012) ("'employees who must work through their overtime break are, in effect, providing ... an additional 10 minutes of labor during ... overtime [hours] ... [and] were entitled to compensation for an additional 10 minutes of overtime.'") (quoting Wingert, above).

[20] COMPS Order, Rule 7.1(C), 7.2. For more information about employer record-keeping requirements, see INFO #7.

[21] C.R.S. 8-1-140(2) provides for fines for any failure (a) "to perform any duty lawfully enjoined within the time prescribed by the director" or (b) "to obey any lawful order made by the director", which includes "any decision, rule, regulation, requirement, or standard promulgated by the director[,]" C.R.S. 8-1-101(11).